# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID# 1507010845 |
| | ) | |
| SHAQUILLE CAMPBELL, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

Submitted: June 10, 2019
Decided: August 29, 2019

On Defendant's Amended Motion for Postconviction Relief. **DENIED.**

## MEMORANDUM OPINION

Daniel B. McBride, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Natalie S. Woloshin, Esquire, Woloshin, Lynch & Associates, P.A., Wilmington, Delaware, Attorney for Defendant.

COOCH, R.J.

## I. INTRODUCTION

Shaquille Campbell ("Defendant") has filed an Amended Motion for Postconviction Relief. In his motion, Defendant asserts that his counsel for his attempted murder trial was ineffective in failing to employ a reasonable trial strategy. Specifically, Defendant contends that Trial Counsel failed to utilize "readily available evidence to undermine the credibility of the State's witnesses and support a finding of guilt of the lesser included offense[.]"[1] The State contends that

---

[1] Def.'s Am. Mot. for Postconviction Relief at 11, *State v. Campbell*, ID# 1507010845, D.I. 57 (Oct. 10, 2018).

1

the record does not support Defendant's claims, and that Defendant's arguments do not overcome the *Strickland* presumption that a trial counsel's strategy is sound.[2]

The Court finds that Defendant has not overcome the presumption that his Trial Counsel's strategy was sound and has not otherwise met the prongs of the *Strickland* analysis. While Defendant may not agree with Trial Counsel's decisions at trial, Defendant has not demonstrated that trial cousnel's choices fell below an objective standard of reasonableness. Accordingly, Defendant's motion is denied.

## II. FACTS AND PROCEDURAL HISTORY

On the night of July 8, 2015, on the 100 block of North Van Buren Street, Wilmington, Delaware, shots rang out in front of the La Flor Market. Police responded at about 10:45 p.m. and found Brian Bey shot and bleeding, but conscious. Medical personnel rushed Bey to Christiana Hospital. At the hospital, Bey told police that the incident had occurred so fast that he could not remember what happened. A witness, Waynetta Wilson, told police that she heard three gunshots, but did not see the shooter or know why Bey was shot. Although neither knew the identity of the shooter, both Bey and Wilson identified Defendant Shaquille Campbell from a photo array on July 13, 2015.

At trial, both Wilson and Bey testified with more detail than they gave in their prior statements to police. Wilson testified that on the night of July 8, an "unknown man got into a verbal altercation with her cousin Kiki when Bey stepped in and challenged the man to a fight."[3] Wilson testified that the unknown man then left the area, returned with a gun, and pointed it at Bey. The man attempted to fire the gun, but the gun jammed. After clearing the gun, the man shot Bey "three to four times while Bey was running behind a car."[4] At trial, Wilson identified Defendant as the shooter but admitted she did not know his identity the night of the shooting. Bey's testimony was largely in line with Wilson's. Bey witnessed a verbal altercation between Wilson's cousin Kiki and the unknown man. Bey stepped in to challenge the man to a fight. The man left the area, returned with a gun, pointed it at Bey and attempted to shoot him. The gun jammed, and Bey "turned away from the shooter and was crossing the street" when the man cleared the gun and fired at Bey four

---

[2] *See Strickland v. Washington*, 466 U.S. 688, 689 (1984).

[3] Def.'s Am. Mot. at 4.

[4] *Id.*

times.[5] Bey testified that he identified Defendant as the shooter five days after the shooting, and Bry identified the Defendant in the courtroom.

Beyond Wilson's and Bey's testimony, the State entered into evidence a surveillance video of the shooting and Bey's medical records from his time at the hospital. The surveillance video corroborated much of Wilson's and Bey's description of the shooting. The medical records confirmed police testimony that, when questioned at the hospital, Bey could not remember "exactly what happened" on North Van Buren Street.[6] However, the medical records also indicated that Bey gave an additional statement at the hospital, claiming that he was "minding his own business talking with friends when [Defendant] started shooting."[7] Bey testified that he "lost four pints of blood that night, … probably died on [his] way to the hospital from loss of blood[,]" and that the bullet was inches from a main artery.[8] Bey's medical records do not appear to directly support his claims, although the records do not appear to directly refute his claims either. The records have no indication as to how much blood he lost, no indication that he lost consciousness or that he had to be revived in the ambulance, and no indication that the bullet was mere inches from one of his main arteries.

Throughout trial, the underlying theme and basis of Defendant's defense was misidentification.[9] Defendant had continuously maintained his innocence throughout the investigation and the criminal proceedings, and Trial Counsel argued that Bey misidentified Defendant as the shooter. To support this argument, Trial Counsel sought to undermine the credibility of Bey. On cross-examination Trial Counsel highlighted Bey's drug use the night of the incident, and argued that Bey's blood tests came back positive for PCP and marijuana. The drug evidence was apparently a vital aspect of Trial Counsel's strategy. For instance, in closing arguments, Trial Counsel argued that Bey "made statements the evidence shows were not correct … So the primary State's witness[,] that says [Defendant] was the man in the video[,] is a felon that [sic] was high on PCP and marijuana at the time."[10]

On the last day of trial, Trial Counsel revealed to the Court that on July 21, 2015, after Defendant was indicted, Bey and Wilson allegedly provided statements to a defense investigator that were inconsistent with their prior identifications of

---

[5] *Id.* at 5.
[6] *Id.* at 14.
[7] *Id.* at 15.
[8] *Id.* at 16
[9] Another judge of this Court, now deceased, presided over the trial.
[10] Def.'s Am. Mot. at 17.

Defendant and their trial testimony. Allegedly, Bey told the defense investigator that he was still taking medication when he spoke to police at the police station, that he had felt pressured to identify someone, and that he would be unable to identify Defendant because he had no knowledge of him. Allegedly, Wilson told the defense investigator that she was not with Bey when he was shot and that she did not see who shot Bey. Defendant "insisted" that these out-of-court statements be admitted.[11]

The State proffered that in rebuttal to the Defendant's evidence it would seek to admit evidence of witness intimidation, including an undated incident in which several individuals in a white BMW pulled up to Bey and threatened Bey's daughter if Defendant did not "come home[.]"[12] The State further claimed that Bey and Wilson had told the State that the statements they made to the defense investigator were false and that they only provided such statements because they feared retaliation from Defendant's alleged associates. Further, the State sought to introduce text messages and phone calls, allegedly from Defendant's associates, Bey and Wilson received the day before trial commenced encouraging them not to appear for trial.[13]

The Court ruled that only evidence of witness intimidation that occurred *before* the alleged statements to the defense investigator would be admissible. Thereafter, Trial Counsel and the State entered into an agreement whereby Trial Counsel would not introduce Bey's and Wilson's alleged prior out-of-court statements, and the State would not introduce *any* evidence of witness intimidation. The jury never learned of Bey's and Wilson's discussion with the defense investigator or of the apparent acts of witness intimidation.

Trial Counsel sought and received a jury instruction for the lesser-included offense of Assault First Degree. Trial Counsel did not argue that the Defendant lacked the intent to kill Bey based on the extent of Bey's wounds. Instead, Trial Counsel focused on the theory of misidentification, stressing Bey's inability to remember the incident and his failure to identify the Defendant until days later upon insistence of the police.[14] Ultimately, however, the jury found Defendant guilty of Attempted Murder First Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Possession of a Deadly Weapon by a Person Prohibited. Defendant was later sentenced to a total of seventeen years at level five

---

[11] *Id.* at 22.
[12] *Id.* at 23.
[13] *See* State's Resp. to Def.'s Am. Mot. at 4, D.I. 63 (Feb. 5, 2019).
[14] *See* Def.'s Am. Mot. at 17.

incarceration. On May 8, 2017, the Delaware Supreme Court affirmed Defendant's convictions and sentences on direct appeal.[15] Defendant filed his original Motion for Postconviction Relief *pro se* on September 26, 2017. Defendant's subsequently appointed postconviction counsel filed an Amended Motion for Postconviciton Relief on August 10, 2018.

As part of the briefing for Defendant's motion, the Court requested that Defendant's Trial Counsel submit an affidavit addressing Defendant's motion. Trial Counsel's affidavit detailed his conduct, his trial strategy, and his reasoning behind the choices Defendant's motion attacked. In the pertinent part, Defendant's Trial Counsel's states:

4. Counsel denies the first allegation that failure to undermine Bey's credibility with medical records was not a sound, tactical decision. The overriding theme of Counsel's defense was that of misidentification of the shooter. The fact that Mr. Bey was shot could not intelligently be contested considering the video and medical records. [Defendant] has always maintained his innocence to counsel. Mr. Bey, as shown by the transcripts, was relatively late in identifying [Defendant] as the shooter. If Mr. Bey wanted to testify that he was not cognizant and badly injured because of the injuries of the shooting counsel could use that to undermine his later identification. Counsel did point to medical records that Mr. Bey's blood tests came back positive for pcp [sic] and marijuana which is contained in the medical records.

5. Counsel denies the second allegation that he did not use the medical records to argue for a lesser included charge of Assault 1st. Though counsel did want a lesser included instruction, counsel did not like to strenuously argue two opposing, contradicting defenses. The deliberate focus was on misidentification and that [Defendant] was not the shooter. By giving ample argument to a lesser included it would appear to be conceding [Defendant's] guilt. Furthermore, there was a video of the actual shooting that was shown to the jury which counsel felt would influence the jury's thoughts on intent more than any injuries that actually occurred from the shooting.

6. Counsel denies that he was ineffective in not introducing the witness recantations. In the case at hand there were numerous allegations of witness tampering other than the one involving the white BMW. Many of these allegations occurred after the recantations were given to the investigator. Counsel was told that calls and texts from [Defendant's] friends and family were sent to Bey and Wilson even as a Deputy Attorney General was

---

[15] *Campbell v. State*, 162 A.3d 101 (Table), 2017 WL 1882418 (Del. May 8, 2017) (holding that there was "no conceivable prejudice that would justify reversal" and there was otherwise no plain error).

meeting with them. After lengthy discussions with the State, counsel came to an agreement with the State that no allegations of witness tampering would come into trial if the recantations were not introduced. Counsel was also cognizant that Bey and Wilson would have had an opportunity to explain their recantation on the stand if they were introduced.[16]

The State filed its Response to Defendant's motion and Trial Counsel's affidavit on February 5, 2019. After the Court granted several extension requests, Defendant replied on June 10, 2019.

## III. THE PARTIES' CONTENTIONS

### A. Defendant's Contentions.

Defendant's overarching argument is that Trial Counsel's conduct was ineffective and "devoid of any sound tactical reasoning."[17] Specifically, Defendant first contends that Trial Counsel failed to utilize Bey's medical records to undermine Bey's credibility and testimony. Defendant argues that most of Bey's testimony was "hyperbole and belied by his own medical records."[18] Defendant contends that Bey's testimony that he lost consciousness in the ambulance was untruthful, and that Bey's medical records do not reference loss of consciousness at all. Further, Defendant argues that Bey's statement to the police that a bullet narrowly missed one of his vital arteries is unsupported by his medical records. Defendant contends that it "belies logic" that Trial Counsel would not use these alleged inconsistencies to undermine the credibility of Bey.[19] If Trial Counsel's strategy ultimate strategy was to undermine Bey's credibility[20] then Trial Counsel, according to Defendant, had no strategic reason not to confront Bey with apparent over-exaggerations and untruths relating to his injuries.[21] Defendant argues that Trial Counsel's failure to confront Bey with his medical records fell below the objective standard of reasonable attorney conduct.

Second, Defendant contends that Trial Counsel was ineffective by failing to utilize Bey's medical records to argue for the lesser-included offense of Assault First Degree. Defendant argues that Trial Counsel should have utilized the medical

---

[16] Affidavit of Def.'s Trial Counsel at 2–3, D.I. 61 (Oct. 31, 2018).
[17] Def.'s Am. Mot. at 25.
[18] *Id.* at 16.
[19] *Id.* at 17.
[20] *See* Affidavit of Def.'s Trial Counsel at 2 ¶4.
[21] Def.'s Reply at 1–2, D.I. 71 (June 10, 2019).

records demonstrate that the severity, or lack thereof, of Bey's injuries supported a lesser-included offense. For example, Defendant contends that Bey was not shot in any vital area, which would—had Trial Counsel argued the point to the jury—suggested a lack of an intent to kill. Further, Defendant argues that the State in closing arguments specifically relied on the alleged severity of Bey's injuries to demonstrate intent to kill.[22] Defendant argues that the medical records were vital to contradict the State's argument and that the records supported a lesser-included charge. Therefore, Defendant reasons that Trial Counsel's non-use of the records fell below the objective standard of reasonable attorney conduct.

Third, Defendant argues that Trial Counsel failed to introduce into evidence Bey's and Wilson's recantations to the defense investigator. At trial, Trial Counsel did broach the potential admission of the recantations. In response, the State stated that it would proffer evidence of witness intimidation, and Trial Counsel decided not to introduce evidence of the recantations to avoid introduction of the State's evidence. Defendant contends that there was no evidence of witness intimidation that occurred before the recantations, and therefore no evidence would have come in had the recantations been introduced. Coupled with Trial Counsel's apparent concession—according to Defendant—that many of the allegations of intimidation would have been inadmissible,[23] Defendant argues that Trial Counsel's strategy was not a reasonable, tactical decision.

Lastly, Defendant contends that not only an evidentiary hearing on his claims desirable, but that this Court "must" grant an evidentiary hearing on his claims.[24] Defendant contends that this Court will only be in a position to "fully appreciate the issues and to appropriately apply the standards set forth by the United State Supreme Court" after an evidentiary hearing.[25]

*B. The State's Contentions.*

The State argues that neither the facts nor the record support Defendant's claims of ineffective assistance of counsel. The State contends that Defendant's arguments do not overcome the presumption that Trial Counsel's conduct was reasonable, and that Trial Counsel's affidavit provided sound reasoning for his decisions.

---

[22] *See id.* at 2 fns.6–7.
[23] *See* Affidavit of Def.'s Trial Counsel at 2 ¶6.
[24] Def.'s Am. Mot. at 7.
[25] *Id.* at 8.

The State argues that Trial Counsel's strategy not to further highlight Bey's injuries was a sound strategic decision. The State contends that any inconsistencies between Bey's testimony and his medical records would not have affected the outcome of the trial. Defendant did not dispute that someone shot Bey. Under the State's theory, if Trial Counsel had focused his strenuous cross-examination on the precise details of a shooting victim's injuries, Trial Counsel ran the risk of offending the jury or coming across as unsympathetic. The State argues that Trial Counsel attacked Bey's credibility in other strategic ways, such as highlighting the presence of PCP and marijuana in Bey's blood at the time of the shooting.

As for Trial Counsel's alleged failure to utilize Bey's medical records to argue for a lesser-included offense, the State contends that such a decision was again a sound trial strategy. According to the State, had Trial Counsel pursued this avenue of attack, Trial Counsel would in effect be arguing contradictory defenses to the jury: that Defendant did not shoot Bey and also that Defendant did not shoot Bey with the intent to kill. Further, the State argues that its own strategy at trial did not include an argument that the extent of Bey's injuries demonstrated an attempted murder. Instead, the State contends that it argued that the number of shots fired at close range, coupled with surveillance video evidence, established Defendant's intent to kill. According to the State, if Trial Counsel had highlighted any supposed lack of severity to Bey's injuries, Trial Counsel would have not addressed the heart of the State's argument. The State contends that Trial Counsel's strategy was therefore sound and reasonable in light of the evidence proffered by the State and the State's arguments.

Lastly, the State argues that Trial Counsel's decision not to undermine Bey's and Wilson's credibility with evidence of their recantations was based on an agreement that the State would not introduce any evidence of witness intimidation during the trial. The State contends that this agreement was beneficial for Defendant as it prevented the risk of prejudicial witness intimidation evidence at trial.

## IV. STANDARD OF REVIEW

Rule 61 is the remedy for defendants "in custody under a sentence of this court seeking to set aside the judgment of conviction . . . ."[26] Rule 61 requires this Court to first determine whether there are any procedural bars to the motion before

---

[26] Super. Ct. Crim. R. 61(a)(1).

8

considering the merits of the claims.[27] This is Defendant's first motion under Superior Court Criminal Rule 61 and it was timely filed.[28] The other procedural bars likewise do not apply because ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[29] The fact that counsel did not raise an argument or objection during the trial, or on appeal, does not bar a defendant from alleging that counsel's failure amounted to ineffective assistance.[30] Defendant's Motion is not procedurally barred.

In review of a claim of ineffective assistance of counsel, the Court must apply the standards as set forth by the United States Supreme Court in *Strickland v. Washington*.[31] Under *Strickland*, "a petitioner seeking postconviction relief on the basis of ineffective assistance of counsel must show that (1) his counsel's performance 'fell below an objective standard of reasonableness' ('performance')[32] and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different ('prejudice')."[33] The Court must analyze counsel's conduct based upon all of the facts of the case and "avoid peering through the lens of hindsight."[34] Further, the Court must give great weight and deference to tactical decisions of the trial attorney.[35] However, where the record establishes that counsel's decision was not a strategic choice, then counsel is not entitled to the presumption of deference set forth in *Strickland*.[36] To prevail on his claims, Defendant must overcome the strong presumption that counsel's conduct was reasonably professional under the circumstances.[37] Defendant must show that any

---

[27] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[28] Defendant's first motion, having been filed within one year of the Supreme Court's Mandate on direct appeal, is timely. *See* Super. Ct. Crim. R. 61(m)(2); Super. Ct. Crim. R. 61(i)(1).

[29] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan–Mayes*, 2016 WL 4502303, at *2 (Del. Super. Ct. Aug. 25, 2016).

[30] *See Malloy v. State*, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011); *Brodie v. State*, 2011 WL 927673, at *1 (Del. Super. Ct. Mar. 17, 2011); *State v. Ross*, 2004 WL 2735515, at *2 (Del. Super. Ct. Nov. 22, 2004).

[31] *Strickland v. Washington*, 466 U.S. 668 (1984); *see Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[32] *Baynum v. State*, 2019 WL 2277804, at *4 (Del. May 29, 2019) (quoting *Strickland*, 466 U.S. at 697).

[33] *Id.* (quoting *Strickland*, 466 U.S. at 697).

[34] *State v. Wright*, 653 A.2d 288, 295 (Del. Super. Ct. 1994).

[35] *State v. Miller*, 2013 WL 871320, at *4 (Del. Super. Ct. Feb. 26, 2013).

[36] *See State v. Baynum*, 2018 WL 1896489 (Del. Super. Ct. Apr. 16, 2018) (citing *Breakiron v. Horn*, 642 F.3d 126, 138 (3d Cir. 2011)).

[37] *Wright*, 653 A.2d at 293–94.

alleged errors were so serious that his counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.[38]

## V. DISCUSSION

### A. No evidentiary hearing is necessary.

Defendant argues that he is "entitled" to an evidentiary hearing, and that the Court "must" grant an evidentiary hearing on his claims.[39] Superior Court Criminal Rule 61(h)(1) states: "after considering the motion for postconviction relief, the state's response, the movant's reply, if any, the record of prior proceedings in the case, and any added materials, the judge shall determine whether an evidentiary hearing is desirable."[40] However, an evidentiary hearing is not required. "If it appears that an evidentiary hearing *is not desirable*, the judge shall make such disposition of the motion as justice dictates."[41] In the instant case, the pleadings and affidavits thoroughly explain the underlying facts and pertinent law. Further, the record of prior proceedings is sufficiently clear for the Court to make such disposition as justice dictates. As such, an evidentiary hearing is not necessary and shall not be ordered.

### B. Defendant has not overcome the strong presumption that Trial Counsel's conduct was reasonable under the circumstances.

As courts have reiterated repeatedly, there is a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[42] Defendant has not overcome this presumption, failing the first prong of *Strickland*.

Defendant's arguments focus on the alleged misuse of Bey's medical records and alleged witness recantations. First, Trial Counsel's decisions to not highlight the alleged reality of Bey's injuries during cross-examination and during arguments for a lesser-included charge do not fall below the objective standard of reasonableness. Both of these related decisions were strategic choices that, according to Trial Counsel, furthered the overarching theme of misidentification: Bey misidentified the shooter. Trial Counsel did not abdicate his responsibility to zealously advocate for his client by making these choices. To attack Bey's credibility and, importantly, his

---

[38] *State v. Finn*, 2012 WL 1980566, at *4 (Del. Super. Ct. May 23, 2012).

[39] Def.'s Am. Mot. at 7.

[40] Super. Ct. Crim. R. 61(h)(1).

[41] Super. Ct. Crim. R. 61(h)(3) (emphasis added).

[42] *See Strickland*, 466 U.S. at 689.

memory, Trial Counsel instead focused on Bey's drug use on the night of the incident. Hospital records indicated that Bey had both PCP and marijuana in his blood at the time of the incident. This evidence spoke directly to Bey's memory of the incident. Furthermore, Trial Counsel highlighted Bey's inability to make an identification until several day after the shooting, upon prompting by the police, and also Bey's felon status.

Trial Counsel focused on such attacks on Bey's credibility, and he did not confront Bey with alleged untruths regarding the extent of his injuries. Trial Counsel stated in his affidavit, it could not "logically be contested" that Bey was shot.[43] As for the extent of the injuries, Bey was not a medical expert and was not expected to give an expert diagnosis. Strenuous cross-examination of the minute details of Bey's injuries may have appeared to the jury to be an attack on a sympathetic shooting victim. Nitpicking his injuries, when it was uncontested that Bey was shot and transported to the hospital, ran the tangible risk that the jury may find Defendant unsympathetic or offensive. Further, highlighting Bey's injuries did not directly advance Trial Counsel's theory of misidentification. Such a consideration also affected Trial Counsel's decisions regarding lesser-included offenses.

Trial Counsel requested and received a lesser-included instruction of Assault First Degree for the jury to consider. As stated above, Trial Counsel's theory was that Bey misidentified the shooter. Any strenuous argument that Defendant did not intend to kill Bey based on the actual extent of Bey's injuries would be contradict the theme Trial Counsel intended to rely on throughout trial. It would force Trial Counsel to argue to the jury that Defendant simultaneously did not shoot Bey and that Defendant did not intend to kill Bey when Defendant shot him. In the face of these "opposing, contradictory defenses,"[44] it was Trial Counsel's duty to guide the jury with one or the other. Trial Counsel avoided the risk of appearing incoherent or ill prepared in front of the jury.

Both instances in which Trial Counsel forbore the opportunity to highlight Bey's injuries through his medical records were sound strategic decisions. Utilizing the medical records in both instances bore several risks. The most apparent risks were appearing unsympathetic to the jury or appearing incoherent. Based on his professional judgment, Trial Counsel balanced these risks against the potential benefits and concluded which path was the better option. Defendant has not

---

[43] *See* Affidavit of Def.'s Trial Counsel at 2 ¶4.
[44] *Id.* at ¶5.

demonstrated that these choices fell below the objective standard of reasonableness. Therefore, Defendant fails the first prong of *Strickland*.

As for Trial Counsel's decision to not introduce Bey's and Wilson's recantations, Defendant has not establish that the decision is unreasonable. Trial Counsel faced the cognizable risk that, had he introduced the recantations, the State would introduce evidence of witness intimidation. In his affidavit, Trial Counsel admits that "many" of the allegations of witness intimidation occurred after the recantation, and thus would be inadmissible.[45] However, the State would be free to introduce allegations that occurred before the recantations. The Court had already deemed such evidence admissible. Trial Counsel was again forced to balance the benefits and risks of introducing certain.

On one hand, the prior statements would speak to the heart of Trial Counsel's misidentification theory. On the other hand, had the jury later seen witness intimidation evidence it would not only call into question the veracity of the witness recantations, but also risk damaging Defendant's credibility and defense. The witness intimidation could suggest Defendant's guilty conscience, something Defendant surely did not want the jury to consider. Furthermore, Bey and Wilson could be called to testify and explain their alleged recantations, which ran the risk of further damaging Defendant's case. To avoid these risks, Trial Counsel agreed with the State to not introduce the recantations. For its part, the State would not introduce witness intimidation evidence. Such a decision was clearly a strategic choice, and Defendant can only offer speculation of how alternative decisions may have played out.

Although now, in hindsight, Defendant may wish Trial Counsel had pursued different trial strategies, such a desire does not warrant a finding of ineffective assistance of counsel. Trial Counsel made several complex strategic choices. Although the choices were difficult, the Court finds that they were the result of sound professional judgment and objectively reasonable under *Strickland*. The Court also notes that there is no convincing evidence that the outcome of the prior proceedings would have been any different had Trial Counsel not acted as he did.

## VI. CONCLUSION

Defendant has not demonstrated that Trial Counsel's conduct deprived him of his right to assistance of counsel guaranteed under the Sixth Amendment of the

---

[45] *Id.* at ¶6.

United States Constitution. Therefore, Defendant's Amended Motion for Postconviction Relief is **DENIED.**

**IT IS SO ORDERED.**

_____
Richard R. Cooch, R.J.

cc:    Prothonotary
       Investigative Services